## Commonwealth ex rel. v. Haney et al.

*Jacob Boonin,* for relators.

*Thomas J. Clary* and *Louis Wagner,* for respondents.

OLIVER, P. J., April 24, 1941.—This is a proceeding in quo warranto to test the legality of a certain election of officers of a nonprofit corporation. Relators, candidates for corporate office in the annual election of December 18, 1939, alleged that the three original respondents were illegally elected at that election to the offices of president, recording secretary, and director. Before the issue came to trial, relators filed a petition and rule seeking to "add" certain persons to the record as parties respondent on the ground, as alleged therein, that the original respondents were no longer holding office illegally since their term had in the meantime expired and that the persons sought to be joined had been elected to the various offices of the corporation on December 16, 1940, in the same illegal manner. The court, since relators indicated in their petition an intent to abandon the proceedings as to the original respondents, ordered, on February 26, 1941, that the officers so elected, consisting of the president, vice-president, recording secretary, financial secretary, treasurer, and 10 members of the board of directors be substituted

as respondents in the place of the three original respondents. Notice of such order as required by its terms was served upon each substituted respondent by relators' attorney on March 12, 1941. On April 1, 1941, the substituted respondents, having entered an appearance de bene esse, filed a petition under the Act of March 5, 1925, P. L. 23, 12 PS §672, raising questions of jurisdiction. The substituted respondents contend that this court has no jurisdiction over them because they were not served with an original writ and a suggestion of a cause of action which they may answer, and because their joinder is an improper attempt to try two separate elections in one proceeding. We have concluded that respondents' position is untenable.

The decree effecting the substitution of the parties was clearly framed under the terms of the Act of April 13, 1840, P. L. 319, 12 PS §2039, which provides:

"It shall be lawful for any court within this commonwealth, in which any trial or question arising on a writ of quo warranto is or may hereafter be pending, on the expiration of the term of office . . . of . . . persons against whom the same has or may have issued, if said court shall be of opinion that the attainment of substantial justice, and the trial of the rights in question, requires the substitution of the person or officer elected or appointed to fill the place of such . . . defendants, to order and decree that the . . . persons so elected or appointed, shall be substituted in the room or stead of the . . . persons . . . whose time of office has expired, and direct such notice to be served on the . . . persons so substituted, as to said court shall seem just and reasonable, after which the cause shall proceed to final hearing and adjudication, in the same manner as though no change had taken place."

It seems evident from the language of this statute that the question of substitution is left to the sound discretion of the court, based upon the peculiar facts of each case. In the present situation, since the term of office of the

original respondents had expired pending the trial of their election, the issues raised by the original writ had for the most part become moot. Although there is some authority that the case, under such circumstances, could nevertheless proceed to trial (Commonwealth ex rel. v. Smith, 45 Pa. 59 (1863)), probably so that relators may recover their costs and any damages actually suffered, it was in the interests of substantial justice for the instant court to allow the substitution so that any judgment of ouster entered would have practical effect. Thus, it would appear that the above act was passed specifically to cover the type of situation now before us.

Nor was it necessary under the act, as respondents contend, that regular process issue and be served by the sheriff. The legislature clearly indicated an intent to avoid such formal requirements when it provided that notice of the substitution shall be served "as to said court shall seem just and reasonable." Here written notice of the substitution and a copy of the order of the court was served on each substituted respondent. This, we think, is sufficient compliance with the act. See Commonwealth v. Moore, 199 Pa. 160 (1901).

However, it will be observed that *all 15* officers elected in 1940 were substituted as parties for the three original respondents. This technically was improper, because parties cannot logically be substituted for persons not of record. The act in question contemplated that only the persons elected to the offices originally held by the parties of record should be substituted as respondents. Consequently, the order of substitution should not have included the persons elected in 1940 to the offices of vice-president, financial secretary, and treasurer. The substitution of 10 directors for the one originally joined was required by the fact that it is impossible to determine which new director was elected to the place originally held by the respondent director.

Although the joinder of the above additional officers, improperly substituted, could have properly been effected

under the Quo Warranto Act of June 14, 1836, P. L. 621, 12 PS §2028 (see Commonwealth ex rel. v. Stevens et al., 168 Pa. 582 (1895)), we think that under the circumstances of the present case they should be excluded. It is a familiar principle in quo warranto proceedings that the relator must have an interest in the office from which ouster of the respondent is sought: Commonwealth ex rel. v. Morris et al., 269 Pa. 476 (1921) ; Commonwealth ex rel. v. Stevens et al., supra. In the original suggestion filed herein, relators stated that they were candidates nominated for office in the election in which respondents were illegally elected. We do not at this time express any opinion as to the sufficiency of such interest since it will be necessary, as we will discuss in detail infra, for relators to file an amended suggestion with respect to the second election. From the amended suggestion, the interest of relators in the second election may be determined, and until such amended suggestion has been filed we do not think it advisable to join additional parties. Therefore, the order of substitution will be amended to exclude those elected to the offices of vice-president, financial secretary, and treasurer.

Furthermore, it does not follow from the above conclusions, as respondents contend, that the legality of two separate elections will be determined in one proceeding. The original respondents are no longer parties of record, the newly-elected officers having been substituted in their place. Consequently, the court will be concerned only with the validity of the second election, the complaint against the original respondents having been abandoned.

However, it will be necessary for relators to amend their suggestion (statement of cause of action). Otherwise, the case will proceed to trial against one set of respondents with pleadings framing an issue against a different group of respondents, who have meanwhile been dropped from the record. This would be patently illogical and lead to confusion at the trial.

It is true that the allowance of such amendment may be a departure from the common-law rule that a cause

of action may not be changed by amendment. But, we think such departure is inherent in the policy of the Act of April 13, 1840, supra. Any other construction would substantially nullify the effect of that act. Under its provisions, the substitution of new respondents is permitted where a new election has been held subsequent to the institution of the suit. Such election necessarily involves a new set of facts and different parties, although the issues to be determined will no doubt be the same. Under such circumstances, it is necessary that the new respondents be given an opportunity to examine a suggestion filed specifically against them to determine its sufficiency as a cause of action, to test the interest of relators in the cause stated and thus the propriety of the joinder of each respondent, and to answer each allegation so that issues of fact may be framed. In this way, the case will proceed to trial in an orderly fashion and reduce the chances of error. In support of the above procedure, we again call attention to the provisions of the Act of April 13, 1840, supra, wherein it is stated that, after notice of the substitution has been served, "the cause shall proceed to final hearing and adjudication, in the same manner as though no change had taken place." The legislature apparently intended that the substitution of new respondents should merely take the place of the institution of a new suit and that the proceedings thereafter should conform to the ordinary rules of practice as though a new writ had issued.

If relators are disturbed because of the delay in reaching trial which the above conclusions will necessitate, they must accept such procedure in the interests of the orderly administration of justice. Furthermore, it will be observed that, before another election is scheduled, about eight months still remain for the filing of the new pleadings, the trial of the issues raised thereby, and the entry of a final judgment.

The petition under the Act of March 5, 1925, supra, is dismissed and the rule discharged.

*Order*

And now, to wit, April 24, 1941, in accordance with the above opinion, it is ordered and decreed that Olger Olsen, Henry X. Winkelspecht, and John I. Murphy, substituted respondents, be excluded from the order of substitution filed herein as of February 26, 1941, and that their names be stricken from the record as parties respondent.

It is further ordered and decreed that relators file an amended suggestion and serve a copy thereof upon each substituted respondent within five days from the date of this order and that substituted respondents, having already been served with notice of their substitution as respondents, answer the amended suggestion within 10 days of the date of service of such suggestion.